**MARS, INCORPORATED, Plaintiff,**

v.

**STANDARD BRANDS, INC., and Curtiss Candy Company, Defendants.**

**No. 73 Civ. 2156.**

United States District Court,
S. D. New York.
Jan. 16, 1974.

Royall, Koegel & Wells, New York City, for plaintiff; David F. Dobbins, William S. Greenawalt, William D. Haney, III, New York City, of counsel.

Watson, Leavenworth, Kelton & Taggart, New York City, for defendants; Leslie D. Taggart, New York City, Ronald L. Engel, James M. Amend, John R. Linton, Kirkland & Ellis, Chicago, Ill., of counsel.

## MEMORANDUM

TENNEY, District Judge.

Defendants have moved for dismissal of this trademark infringement and unfair competition action or, in the alternative, for a stay of this action pending final determination of an action which is currently before an Illinois state court ("the Illinois Action"). For the reasons stated below, defendants' motion for dismissal is denied but their motion for a stay is granted.

## FACTS

Plaintiff Mars, Incorporated is a Delaware corporation with its principal place of business in Virginia. Defendant Standard Brands, Inc. ("Standard") is a Delaware corporation with its principal place of business in New York. Defendant Curtiss Candy Company ("Curtiss"), a wholly owned subsidiary of Standard, is an Illinois corporation with its principal place of business in Illinois.

In April 1968, plaintiff began using the term "Fun Size" on certain candy bars sold under the trademarks of "Milky Way", "Snickers", "Peanut Munch", "Three Musketeers", "Mars" and "M & M's". In August 1971, defendant Standard began using the term "Fun Size" on its "Planters Jumbo Block" candy bars. Later, defendant Curtiss began using the term "Fun Size" on its "Baby Ruth" and "Butterfingers" products.

In September 1971, plaintiff registered "Fun Size" as an Illinois trademark. On October 12, 1971, it filed suit in an Illinois state court seeking monetary and nationwide injunctive relief for common law trademark infringement, unfair competition and violation of the Illinois Uniform Deceptive Trade Practices Act, Ill.Rev.Stat., Ch. 121½, ¶ 312 (1971). Plaintiff obtained personal jurisdiction over both Standard (which is licensed to do business in Illinois) and Curtiss. Thereafter, defendants filed a counterclaim for declaratory relief and cancellation of plaintiff's Illinois trademark certificate of registration.

Shortly after the Illinois Action was commenced, plaintiff moved for a preliminary injunction. After holding an evidentiary hearing, the Illinois trial court denied the motion upon the ground that plaintiff was not likely to succeed on the merits. Plaintiff appealed from the denial but the Illinois Appellate Court affirmed the trial court's decision. Plaintiff then petitioned the Appellate Court to reconsider its decision or to certify the case to the Illinois Supreme Court. The petition was denied. Plaintiff's petition to the Illinois Supreme Court for leave to appeal was also denied as was plaintiff's subsequent petition for reconsideration.

Just before the Illinois Supreme Court remanded the case back to the trial court, plaintiff purchased the registered trademark "Fun" from a West Coast firm. It then brought the instant action on May 15, 1973, alleging trademark infringement in violation of § 32(1) of the Trademark Act of 1946 ("the Act"),

15 U.S.C. § 1114(1); unfair competition in violation of § 43(a) of the Act, 15 U.S.C. § 1125(a); and unfair competition in violation of New York common and statutory law. Federal jurisdiction is based upon 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121. The relief sought is essentially the same as that requested in the Illinois Action, with the exception that plaintiff asks that its trademark "Fun" be declared valid and infringed by defendants' actions.

After the instant suit was instituted, defendants suggested that plaintiff either stipulate to a dismissal with prejudice of the Illinois Action or agree that the Illinois court's findings be considered res judicata. Instead, plaintiff moved in the Illinois Action for a stay of proceedings. The Illinois trial court denied plaintiff's motion but indicated that plaintiff could renew the motion after this Court had decided the motions before it. The Illinois trial court also directed the parties to proceed with discovery.

## DEFENDANTS' MOTION TO DISMISS

Invoking the doctrine of *forum non conveniens,* defendants have moved to dismiss this action. Plaintiff opposes on the grounds that defendants have failed to show that the Southern District of New York is inconvenient and that defendants could have moved for transfer to another federal district court under 28 U.S.C. § 1404(a).

▪▪ It is fairly clear that, in situations in which there is another federal district court where the action could have been brought, § 1404(a) controls and dismissal of the action under the common law doctrine of *forum non conveniens* is inappropriate. *See* Gross v. Owen, 95 U.S.App.D.C. 222, 221 F.2d 94, 96 (1955); Fiorenza v. United States Steel International, Ltd., 311 F.Supp. 117, 120 (S.D.N.Y.1969); Simon v. Silfen, 247 F.Supp. 762, 763 (S.D.N.Y. 1965); Glicken v. Bradford, 204 F.Supp. 300, 304 (S.D.N.Y.1962). Because this action could have been brought in the federal district court for the Northern District of Illinois, dismissal of this action is therefore unwarranted.

## DEFENDANTS' MOTION TO STAY

▪ A party is not precluded from bringing a federal action based upon *in personam* jurisdiction even though it may have instituted previously a similar or identical action based upon *in personam* jurisdiction in a state court. Kline v. Burke Construction Co., 260 U.S. 226, 230, 43 S.Ct. 79, 67 L.Ed. 226 (1922). Of course, the federal court, exercising its discretionary power, may stay the action before it pending the determination of the prior state action. Mottolese v. Kaufman, 176 F.2d 301, 302–303 (2d Cir. 1949); Kamen Soap Products Co. v. Struthers Wells Corp., 159 F.Supp. 706, 712 (S.D.N.Y.1958).

Defendants ask this Court to exercise its discretion in this case. They contend that plaintiff purchased the federally registered trademark of "Fun" solely to get a second day in court and that, in reality, the two actions are one and the same. They suggest that any prejudice which might result to plaintiff upon a stay of the instant action could be remedied by having the Court direct plaintiff to amend the Illinois complaint and allege the same federal and state claims there.

Before addressing the various arguments which plaintiff offers in opposition to this motion, a few comments are in order.

The sequence of events tends to suggest that plaintiff is engaged in what is commonly known as forum shopping. The Second Circuit's discussion in Semmes Motors, Inc. v. Ford Motor Company, 429 F.2d 1197 (2d Cir. 1970) is therefore quite relevant.

In *Semmes,* plaintiff brought an action in a New Jersey state court. The action was then removed to a district court sitting in New Jersey. Approximately six weeks later, plaintiff brought

another action in the federal district court for the Southern District of New York. Both actions arose from the same set of operative facts. However, the scope of the New York action was broader than that of the New Jersey action. Defendant moved for a stay of the New York proceedings. The motion was denied, but on appeal, the Second Circuit reversed that portion of the lower court's order. It ordered that the New York action be stayed on the condition that defendant permit plaintiff to conform its New Jersey pleading to its New York pleading. In so doing, the Court stated:

"While Ford's [defendant's] fears of parallel litigation in two courts could be stilled if it were willing to consent to plaintiffs' discontinuing the New Jersey action, and Ford has no vested right to be proceeded against in the New Jersey rather than the New York federal court, see Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 930 (3 Cir. 1941), these factors alone are insufficient grounds for departing from *the general rule that in the absence of sound reasons the second action should give way to the first.* [Citation omitted.]

"To begin with, *any exception for cases where the same party is plaintiff in both actions would entail the danger that plaintiffs may engage in forum shopping or, more accurately, judge shopping.* When they see a storm brewing in the first court, they may try to weigh anchor and set sail for the hopefully more favorable waters of another district. The sequence of events here affords some indication that Semmes [plaintiff] might have been attempting to do just that, [footnote omitted]. The defendant is then put to the Hobson's choice of either going along with this ploy by agreeing to dismissal of the first action if the plaintiff is willing or having to defend two lawsuits at the same time. If he makes the latter election, as is his right, not only the parties

but the courts pay a heavy price. 'Courts already heavily burdened with litigation with which they must of necessity deal should * * * not be called upon to duplicate each other's work in cases involving the same issues and the same parties,' Crosley Corp. v. Hazeltine Corp., *supra,* 122 F.2d at 930. *Hence, even when the same party is plaintiff in both actions, the instances where the second court should go forward despite the protests of a party to the first action where full justice can be done, should be rare indeed."* 429 F.2d at 1202-1203 (emphasis supplied).

The same considerations of judicial economy and fairness apply here. That the district court in Maternally Yours, Inc. v. Your Maternity Shop, Inc., 89 F.Supp. 167 (S.D.N.Y.1950), did not stay the action before it in favor of the prior state action does not dictate a different result. In *Maternally Yours,* the district court did not, as in the instant action, have to consider the prejudice that might result to a defendant who, for a period of one and a half years, had been engaged in active litigation with the same plaintiff over facts substantially similar to those forming the basis of the federal action. Moreover, the defendant in that case apparently did not oppose a stay of the state action.

*Semmes* places a heavy burden upon plaintiff to show that a stay of this action would be prejudicial to it. To meet that burden, plaintiff argues that the two actions are factually and legally distinct and that it would be prejudiced by a stay, particularly if it were compelled to assert its federal and New York claims in the Illinois Action; that the Illinois court might not have the power to give it the nationwide injunctive relief which it seeks; and that the Illinois Action is "moribund". The Court will consider these arguments seriatim.

Plaintiff contends that, where as here, the second action is factually "broader" than the first, the second

court should not stay its hand in favor of the first action. It cannot be denied that this action is "broader" than the first because it involves new matter— the federally registered trademark "Fun". Nevertheless, an examination of the pleadings in both actions indicates that they are, for all intents and purposes, the same: the events described in both complaints are, with the exception of plaintiff's ownership of the "Fun" trademark, identical and the relief requested in both actions is nearly identical.

█ Plaintiff also argues that the Illinois Action is legally distinguishable from the instant action and that it would lose certain procedural and substantive advantages were it compelled to prosecute its federal and New York claims in the Illinois Action. For example, plaintiff claims that it would lose the presumption of validity conferred by 15 U.S.C. § 1115(a) and, citing Mottolese v. Kaufman, *supra*, 176 F.2d at 303–304 and Boggess v. Columbian Rope Co., 167 F.Supp. 854, 856 (S.D.N.Y.1958), that it would therefore be improper to stay this action. *Mottolese* and *Boggess* involved the loss of federal discovery rights, rights which would not be available in state court proceedings. Plaintiff has not cited, and this Court cannot find, support for the proposition that the statutorily created presumption in favor of a federally registered trademark would necessarily be unavailable to it in an amended Illinois Action. Indeed, it would appear that the Illinois court would be bound to apply that presumption. *Cf.* Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538, 540–541 n. 1 (2d Cir. 1956). *See* Developments in the Law—Trade-marks and Unfair Competition, 68 Harv.L.Rev. 814, 877 (1955).

█ Another argument which plaintiff makes is that it would not be required to prove that the term "Fun Size" has a "secondary meaning" in order to establish a claim for unfair competition here although it does have to do so under Illinois law. At this stage

of the proceedings, it is difficult to determine whether the facts of this case would entitle plaintiff to rest upon a showing of something less than "secondary meaning". *See, e. g.*, Flexitized, Inc. v. National Flexitized Corp., 335 F.2d 774, 781–782 (2d Cir. 1964), cert. denied, 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965); Norwich Pharmacal Co. v. Sterling Drug, Inc., 271 F.2d 569, 571 (2d Cir. 1959), cert. denied, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960); Ralston Purina Co. v. Thomas J. Lipton, Inc., 341 F.Supp. 129, 135 (S.D.N.Y. 1972); Mortellito v. Nina of California, Inc., 335 F.Supp. 1288, 1294–1295 (S.D. N.Y.1972). Additionally, it is not at all clear whether the Illinois court would be compelled to apply the same law as would be applied by a federal district court sitting in New York Flexitized, Inc. v. National Flexitized Corp., *supra*, 335 F.2d at 780–781; Developments in the Law—Trade-marks and Unfair Competition, *supra*, 68 Harv.L.Rev. at 879–80, or whether the Illinois court, under appropriate choice of law principles, would apply the New York law of unfair competition to this case. For those reasons the Court is convinced that it would be improper to stay this action upon the condition that plaintiff amend its Illinois pleadings so as to include the federal and New York claims. However, it would be both fair and more efficient to stay any further proceedings in this action until a final judgment is rendered in the Illinois Action. In that way, plaintiff could renew the legal arguments it has made in opposition to the instant motion. At the same time, defendants would be entitled to invoke the doctrines of res judicata and collateral estoppel, 1B Moore's Federal Practice ¶ 0.405 [1] at 621, and the Court would not have to duplicate the work of the Illinois courts.

█ The second major argument plaintiff makes is that the Illinois court might not be able to grant plaintiff extraterritorial relief. That argument has no merit. The Illinois court has personal jurisdiction over both defendants so that if and when it ultimately finds that plaintiff is entitled to nationwide injunc-

tive relief, it would have the power to grant it. *See* Pomeroy, 4 Equity Jurisprudence § 1318 (1941). The Illinois trial court has so stated and the defendants have conceded that point.

■ The final argument plaintiff makes is that the Illinois Action is "moribund." Plaintiff may wish that were the case, but it is difficult to understand how it can make that argument after having brought a motion for a preliminary injunction and after having appealed its denial to the highest court in the State of Illinois.

## CONCLUSION

Accordingly, defendants' motion to dismiss the action is denied but defendants' motion to stay the action until such time as a final judgment is rendered in the Illinois Action is granted.

So ordered.